## Elizabeth Pyfer v. Horatio Wales, Administrator of the Estate of Morton D. Swift, and Ambrose Sanborn, Administrator de Bonis Non with the Will Annexed of the Estate of Adelia Bush.

1.   MASTER IN CHANCERY—*Decision, When Final.*—Where a matter in controversy has been referred to a master in chancery and he makes his report thereon, if no exceptions are taken to the same, it must be regarded as final.

2.   DEPOSITS OF MONEY AT DIFFERENT TIMES—*Presumptions as to Which is First Drawn Out.*—As a general rule when a depositor makes deposits in a bank from time to time, and also draws money from the bank at different periods, the law presumes that the deposits first in date are first drawn out.

3.   SAME—*Exception to the Rule.*—Where a depositor holds money in a fiduciary character or as trustee and deposits it with his own money in bank and afterward draws out money by means of checks, the law presumes that he draws his own funds in preference to the trust money.

**Memorandum.**—Bill of interpleader. Appeal from the Circuit Court of Ogle County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the May term, 1894. Reversed and remanded with directions. Opinion filed December 13, 1894.

APPELLANT'S BRIEF, J. W. ALLABEN AND J. C. SEYSTER, ATTORNEYS.

The deposit of trust funds by a trustee in his private bank account, in which he may have deposited moneys of his own or moneys belonging to other *cestuis que trust,* does not so far destroy the identity of the funds that the *cestuis que trust* merely become a general creditor. Rabel v. Griffin, 12 Daly (N. Y.) 241; Van Allen v. American Nat'l Bank, 51 N. Y. 1; Pennell v. Deffell, 4 DeGex, M. & G. 372; In re Hallett's Estate, 13 L. R. Ch. Div. 696.

We cite the following authorities as sustaining, in a general way, the right of the beneficial owner of a fund to follow and recover the same when deposited in bank or reinvested by another, and therefore sustaining the right of the appel-

Pyfer v. Wales.

lant in this case to recover. Independent District of Boyer v. King, 45 N. W. Rep. 908; U. S. v. State Bank, 96 U. S. (6 Otto) 30; Smith v. Combs, 49 N. J. Eq. 420.

In every such case the fair and reasonable presumption is, that the trustee used and disposed of his own assets in his own personal transactions, and retained the assets which he held in trust. Smith v. Combs, 49 N. J. Eq. 420.

Trust funds will be followed through all the ramifications of the trade of business, or if deposited in bank with private funds will be separated from the latter and given to the beneficiary. Lewin on Trusts and Trustees, Vol. 2, p. 894; 1 Perry on Trusts, Secs. 128, 447; McComas v. Long, 85 Ind. 552; Taylor v. Plummer, 3 Maule & Sellwyn 562; Rex v. Eggington, 1 T. R. 369; Sayers ex parte, 5 Vesey, Jr. 169; The Farmers & Mechanics Nat'l Bank v. King, 57 Pa. St. 202; Starr v. York Nat'l Bank, 55 Pa. St. 364; 2 Black. Com., 405; 2 Kent. Com., 364; Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 108; Story on Agency, Secs. 205, 333; Morse on Banks and Banking (3d edition), p. 929, Sec. 590.

Appellee Wales' Brief, Fred Zick and Franc Bacon, Attorneys.

Where a trustee has converted a trust fund into moneys, so that it can not be separated from the latter, the beneficial owner occupies the position of a general creditor of the estate. Ill. Tr. and Sav. Bank of Chicago v. Smith, 21 Blatchf. 275.

Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced it will be held, in its new form, liable to the rights of the *cestui que trust*. No change of its state and form can divest it of such trust. So long as it can be identified, either as the original property of the *cestui que trust*, or as the product of it, equity will follow it, and the right of reclamation attaches to it until detached by the superior equity of a *bona fide* purchaser for a valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself, so long as it can be ascer-

tained to be such; but the right of pursuing it fails when the
means of ascertainment fail. Thompson's Appeal, 27 Pa.
St. 16; Goodell v. Buck, 67 Me. 514; Portland and Harpwell
Steamboat Co. v. Locke, 73 Id. 270; United States v. Inhab-
itants of Waterbury, 2 Ware (U. S. D. C.) 158; Englar v.
Offutt, 70 Md. 78; Johnson v. Ames, 11 Pick. 172; School
Trustees v. Kirwin et al., 25 Ill. 73.

As to the holdings of other courts in support of the propo-
sition that in order to recover a trust fund the specific arti-
cles must be found, or others which are the proceeds or
products of such articles, by a change which the claimant
must distinctly point out, we cite the following additional
references : Story's Eq. Jur., Secs. 1258, 1259; Kipp v. Bank,
10 Johns. (N. Y.) 63; Bank v. Russell, 2 Dill. (U. S. C. C.)
215; Bank v. Bank, 15 Fed. Rep. 858; In re Vetterlein, 26
Id. 145; Thompson's Appeal, 22 Pa. St. 16; People v. Bank,
78 N. Y. 271; Butler v. Sprague, 66 Id. 392; Ferris v. Van
Vechten, 73 Id. 120; Van Allen v. Bank, 52 Id. 4; Dowes v.
Kidder, 82 Id. 121; Allen v. Russell, 78 Ky. 104; Cook v.
Tullis, 18 Wall. (U. S.) 332; Parker v. Jones, 66 Ala. 234;
Cragie v. Hadley, 99 N. Y. 131; Bank v. Dowd, 35 Fed.
Rep. 340; Lathrop v. Bampeton, 31 Cal. 17; Goodell v. Buck,
67 Me. 514; Steamboat Co. v. Locke, 73 Id. 370; In re Coan
Mfg. Co., 12 Nat. Bank Reg. 203; In re Janeway, 4 Id. 100;
Englar v. Offutt, 16 Id. 497; Culham v. Stewart, 3 Can. L. T.
550.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF
THE COURT.

This was a bill of interpleader brought by Barber Bros.
& Co., of Polo, Illinois, making appellant and appellees
parties defendant, to settle between them the title and right
to have $697.37 on deposit in their bank on account of Mor-
ton D. Swift, deceased.

The bank was the place of deposit for deceased's private
funds, and in April, 1893, he received a certificate of deposit
on the bank from appellant calling for the sum of $1,295
on the Barber Bros. & Co. Bank, indorsed by appellant to

him. At the same time he gave her a receipt, stating he had received the deposit for safe keeping. In a day or two afterward he made a deposit of this certificate in the bank on his own account and took a credit in his book of deposit for it. The credit containing this deposit was made of this certificate and three other items, and aggregated $1,315. At that time deceased had to his credit in his bank book, $463.12, and afterward he put in at different times sums amounting to $1,729.61, and drew out all except the amount in controversy.

The question is whether the appellant, whose certificate of deposit made up a part of deceased's account in the bank, is entitled to that sum, or whether the administrator is entitled to it.

Ambrose Sanborn claimed a portion of the amount of the deposit remaining in the hands of the bank as the administrator of Adelia Bush, deceased, but the master in chancery found against him on his claim, and no exception was taken by him to this report, therefore the action of the court rejecting his claim must be regarded as final.

It appears also that the amount claimed by Ambrose as administrator, etc., had been drawn out by Swift, before he deposited appellant's certificate, except a claim for $277.75, which the evidence failed to sustain as found by the court and master.

The money in question never became the property of Swift, and the certificate of deposit was indorsed to him for safe keeping only.

As a general rule, when a depositor makes deposits from time to time and also draws money from the bank at different periods, the law presumes that the deposits first in date are first drawn out by the depositor. Devanes v. Noble, 1 Merivale's Reports, 529, 572 to 620. There is an exception to this rule; where a depositor holds money in a fiduciary character or as trustee and deposits it with his own money in bank and afterward draws out money by means of checks, the law presumes that the drawer must be taken to have drawn out his own funds in preference to the trust money.

In re Halletts' Estate, 13 Law Reports, Chancery Division, 696. In the last case cited it was decided that money held in a fiduciary capacity by one who places it in bank can be recovered of the bank, although mixed with the depositor's own money, and the presumption is that the money drawn by the depositor is his own, even if the trust money and his own are in one account. Overseers Poor Norfolk Co. v. Bank of Virginia et al., 2 Gratton, 544. To the same effect are the following cases: Hall, Administrator, v. Otis, 77 Me. 122; Robel v. Griffin, 12 Daly's R., N. Y. Com. Plea. 241, and cases cited; Cen. Natl. Bank of Baltimore v. Connecticut Mutual Life Ins. Co., 104 U. S. 54, in which In re Halletts is referred to and approved. In the case above cited, the United States Supreme Court lays down the principle thus:

"This doctrine of equity is modern, only in the sense of its being a consistent and logical expression of principles originating in the very idea of trusts, for they can only be preserved by a strict enforcement of the rule which forbids one holding a trust relation from making private uses of trust property." See, also, Third Nat. Bank, etc., v. The Stillwater Gas Co., 36 Minn. 75, and the same doctrine is held in Kansas and Pennsylvania and other States. See, also, Standish v. Babcock et re, 29 Atlantic R. 327, Court of Chancery, N. J. The court below finds in its decree that the money deposited by Swift at the time the certificate of deposit was placed in the bank was immediately and at once intermingled with the certificate of deposit or the money arising therefrom and with other moneys to the credit of Swift, "and that the identity of the said money or the avails of the said certificate were not a trust fund and were not distinguishable or traceable as a separate and distinguishable fund, as the court finds said Swift had placed in open account other moneys after the said 29th day of April, 1893 (the date of the deposit of the certificate), amounting in the aggregate to $1,729.61," and that it all had been checked out save $697.37. The basis of the decree was that inasmuch as the certificate of deposit had been intermingled by Swift and the bank with other mon-

eys, it lost its character as a trust fund, and could not be
identified as arising from the certificate, and the balance
in the bank could not be identified.

We think this position is not tenable. The certificate
of deposit as shown by the receipt of Swift held by appel-
lant was placed in his hands for safe keeping. He had not
the privilege to use it as his own and make himself the
general creditor of appellant. He occupied a fiduciary re-
lation to appellant as a special depositor and trustee. Swift,
instead of holding the certificate separate and apart, de-
posited it in the bank to his own account. The fact that the
certificate went into the account is clearly shown by the
evidence. The question presented is, did it remain there
unexpended by Swift and is the balance of his deposit ac-
count of $697.37 the proceeds or avails of appellant's cer-
tificate. That depends on legal presumptions. And we
have shown by the authorities cited that while Swift drew
out a large portion of his deposit account the law holds
that he drew out his own individual share first, and what
remained belonged to appellant and was the proceeds of her
certificate of deposit, none of which should have been ex-
pended for Swift's individual benefit. It is the same as
though Swift had taken the bank's promissory note for the
identical money. The contention that the indorsement on
the certificate of deposit by appellee was made after the re-
ceipt given her and in pursuance of a subsequent agreement
to loan the money to Swift, is not supported by the evi-
dence.

The appellee cites and relies on the case of School
Trustees v. Kerwin et al., 25 Ill. 73, in support of his con-
tention.

We think the case is not in point. That was a suit
against the bank and not an attempt to reclaim the identi-
cal money. Here the bank brings the money, the proceeds
of Swift's deposit of appellant's certificate, into court, and
asks the court to give it to the party entitled to it by law.
The bank is not claiming benefits that might accrue to it as
being an innocent purchaser of the certificate, but brings

the proceeds of that certificate into court and offers it up to the rightful party, disclaiming ownership or benefit arising to itself on account of the deposit, and admits it to be either appellant's or appellee's. Allowing that this certificate at one time had been mixed up with the individual deposits of Swift in the bank so that it could not be identified, and if Swift had died before he had separated his own money from it by drawing it out, and that if Swift had then died, appellant's money could not have been identified so as to have recovered it in an action like this, it by no means follows that after Swift had identified it by drawing out his personal funds, leaving a balance in legal contemplation the proceeds of appellant's certificate, that appellant should not be awarded those proceeds. This being trust money and traced into Swift's deposit account it could be there followed even if mingled with other money of his account. Wilson et al. v. Kirby, Adm'r, 88 Ill. 566.

Suppose Swift had converted the appellant's certificate into money and had afterward mixed it in common mass with other funds, bills or coin, so that it could not have been identified, and had afterward taken out a portion of such bills and coin, leaving appellant's amount, and have put this amount into a sack by itself and put a tab on it, marking it as appellant's money held by him as special depositor, would not appellant have had the right to this money as against the administrator?

The money arising from the certificate could have been identified by those "earmarks" and would have been awarded to appellant in accordance with legal principles. But the case at bar is no different. The money in the hands of the bank has been clearly identified as the proceeds of appellant's certificate of deposit and it is not mixed with any other money of deceased, no portion of the general estate of Swift is mixed with it, the bank is claiming no benefits accruing to it as an innocent purchaser, or otherwise, but is willing to surrender it to the party equitably entitled to it. What principle is there in any rule of law or equity that would withhold it from appellant? The

claim or chose in action against the bank ought to take the place of the certificate. In School Trustees v. Kirwin et al., 25 Ill. 73, cited and relied on by appellees, it is laid down as a rule of law that "It is not necessary, if the trust be moneys, that the particular coin or kind of money or individual pieces shall be identified in order to pursue it, but its identity as a fund must be preserved so that it may be distinguished from all other money. It is sufficient so long as it can be followed as a separate and independent fund distinguishable from any other," and "until detached by superior equity of a *bona fide* purchaser for a valuable consideration without notice." The same doctrine is clearly held in Wetherel v. O'Brien, 140 Ill. 146; Union National Bank of Chicago et al., 138 Ill. 184, also cited by appellee.

In the case first cited of Trustees v. Kirwin, *supra*, the court held that "When the money in question in that suit was received into the bank the money was mixed up with the money of the bank and its identity as a fund thereby lost" * * * "it having been mixed and confounded in a general mass of property of the bank of the same description the right to pursue it must also fail."

In that case the rights of the bank were being considered. In this case the appellant does not lose her rights to pursue her claim to recover her money by its changed form if it can be identified.

It is in the form now of money in the hands of the court, deposited there by the bank, now freed by this act from responsibility, in which appellant's certificate was deposited and the proceeds of such certificate clearly traced under the rules of law and equity, and as we think should be awarded to her.

The decree of the court below is reversed and the cause remanded with directions to the Circuit Court to award, by its decree, the money in question to the appellant, less the costs of suit.